## Case No. 3,390.

### In re CRETIEW.

[5 N. B. R. 423.] [1]

District Court, N. D. New York. Sept. 30, 1871.

#### DISCHARGE OF BANKRUPT.

1. A specification filed in opposition to a bankrupt's discharge will not be stricken out because all the transactions therein alleged as the grounds of opposition occurred long before the passage of the bankrupt act [of 1867 (14 Stat. 517)].

[Cited in Re Seeley, Case No. 12,628; Re Wolfskill, Id. 17,930.]

2. There is nothing in the language of the twenty-ninth section of said act which indicates an intention to confine the operations of its provisions to transactions occurring after the passage of the act. In re Rosenfeld [Case No. 12,058], considered and overruled.

[Cited in Re Signer, 20 Fed. 237.]

W. L. Jones, for opposing creditor.
George Gorham, for bankrupts.

HALL, District Judge. This is a motion to strike out the second and third specifications filed by a creditor in opposition to the bankrupt's discharge. The first specification sets forth, among other things, that in eighteen hundred and sixty-nine, the opposing creditor recovered a judgment in the supreme court of this state for seven thousand four hundred and seventy-five dollars and upwards, upon an administration bond which the bankrupt had before then signed as surety. This first specification is referred to in the second specification, which sets forth in substance, (among other things,) that the bankrupt, after he had executed such administration bond in the penalty of twelve thousand dollars, and had become liable to pay a large amount by reason thereof, well knowing his liability, and being insolvent and in contemplation of becoming bankrupt, and the owner at the time of two certain described stores and premises in the city of Buffalo, of about the value of eighteen thou-

---

[1] [Reprinted by permission.]

sand dollars, and having previously thereto executed a mortgage on said stores and premises for the sum of three thousand dollars to one John Hutchinson, he, (the said bankrupt) on or about the nineteenth day of October, eighteen hundred and sixty-four, did cause the mortgage to be assigned and passed to one James M. Baker, and had the said Baker thereafter commence an action thereon to foreclose such mortgage and have said property sold by virtue of a judgment on said mortgage; that said property was so sold December tenth, eighteen hundred and sixty-four, for two thousand nine hundred dollars, and the title thereto taken by Joseph Borke, a son-in-law of the bankrupt; that the bankrupt, in contemplation of becoming bankrupt and being insolvent, had the title to said property taken and held by Borke; that said mortgage was made and executed, and said foreclosure instituted and judgment and sale thereunder had, and the title to said property taken in the name of said Borke and held by him as a fraudulent gift, transfer and conveyance, and for the purpose of preventing the same from going into the hands of an assignee and being equally distributed among all of the bankrupt's creditors, and merely as a cover and to prevent such property from being taken on account of any liability of said bankrupt on said administration bond, and with the intent to enable the bankrupt to retain, as he has ever since done, the control and management of said property; that he now occupies one of the said stores and lives in or over one of them; that the bankrupt, during all the time aforesaid, was insolvent and in contemplation of becoming bankrupt, and that the said sale or pretended sale of such property was fraudulent and void. It does not allege any concealment of his property or any willful false swearing by the bankrupt. The third specification alleges that the bankrupt's assets are not equal to fifty per cent. of the claims proved against his estate, upon which he was liable as principal debtor, and which debts were contracted subsequent to December, eighteen hundred and sixty-eight; but it does not allege that the consent of a majority in number and value of his creditors holding his said last mentioned debts was not filed before or at the hearing upon the order to show cause against his discharge. It is therefore insufficient, and must be stricken out. But this question may be presented by the opposing creditor, or any other creditor, upon the hearing before the register on the reference, under rule sixty, of the general question whether the bankrupt is entitled to his discharge. It is insisted that the second specification should be stricken out because all the transactions therein alleged as the grounds of opposition to the bankrupt's discharge occurred long before the passage of the bankrupt act. By the twenty-ninth section of that act it is provided that "no discharge shall be granted to the bankrupt if he has given any fraudulent preference contrary to the provisions of that act, or made any fraudulent payment, gift, transfer, conveyance or assignment of any part of his property; * * * or if he has, in contemplation of becoming bankrupt, made any pledge, payment, transfer, assignment or conveyance of any part of his property, directly or indirectly, absolutely or conditionally, * * * for the purpose of preventing the property from coming into the hands of the assignee, or of being distributed under the act in satisfaction of his debts;" and the question is whether the second specification sufficiently alleges any bar to the bankrupt's discharge under these provisions. There is nothing in the language of the section which contains these provisions which clearly expresses or plainly indicates an intention to confine the operation of these provisions to transactions occurring after the passage of the bankrupt act. In respect to other fraudulent or prohibited acts mentioned in the same section, such intention is clearly expressed, or necessarily to be inferred, but such is not the case in respect to the provisions under consideration, and clear or strong proof of legislative intention should be required before deciding that congress intended that an act equally fraudulent and dishonest in its character and purpose before and after the passage of the bankrupt act should bar a discharge if done the day after its passage, and not bar it if done the day before it became a law. In order to present in the clearest and fullest manner the language upon which this question of interpretation or construction arises, the twenty-ninth section of the bankrupt act will be copied in full. It is as follows:

"Section 29. And be it further enacted, that at any time after the expiration of six months from the adjudication of bankruptcy, or if no debts have been proven against the bankrupt, or if no assets have come to the hands of the assignee, at any time after the expiration of sixty days, and within one year from the adjudication of bankruptcy, the bankrupt may apply to the court for a discharge from his debts; and the court shall thereupon order notice to be given by mail to all creditors who have proved their debts, and by publication at least once a week in such newspapers as the court shall designate, due regard being had to the general circulation of the same in the district, or in that portion of the district in which the bankrupt and his creditors shall reside, to appear on a day appointed for that purpose, and show cause why a discharge should not be granted to the bankrupt.

"No discharge shall be granted, or, if granted, be valid: (1) If the bankrupt has wilfully sworn falsely in his affidavit annexed to his petition, schedule or inventory, or upon any examination in the course of the proceedings in bankruptcy, in relation to any material fact concerning his estate or his

debts, or to any other material fact; or (2) if he has concealed any part of his estate or effects, or any books or writings relating thereto; or (3) if he has been guilty of any fraud or negligence in the care, custody or delivery to the assignee of the property belonging to him at the time of the presentation of his petition and inventory, excepting such property as he is permitted to retain under the provisions of this act; or (4) if he has caused, permitted or suffered any loss, waste or destruction thereof; or (5) if, within four months before the commencement of such proceedings, he has procured his lands, goods, money or chattels to be attached, sequestered, or seized on execution; or (6) if, since the passage of this act, he has destroyed, mutilated, altered or falsified any of his books, documents, papers, writings or securities; or (7) has made or been privy to the making of any false or fraudulent entry in any book of account or other document with intent to defraud his creditors; or (8) has removed, or caused to be removed, any part of his property from the district with intent to defraud his creditors; or (9) if he has given any fraudulent preference contrary to the provisions of this act, or made any fraudulent payment, gift, transfer, conveyance or assignment of any part of his property; or (10) has lost any part thereof in gaming; or (11) has admitted a false or fictitious debt against his estate; or (12) if having knowledge that any person has proved such false or fictitious debt, he has not disclosed the same to his assignee within one month after such knowledge; or (13) if being a merchant or tradesman, he has not, subsequently to the passage of this act, kept proper books of account; or (14) if he, or any person in his behalf, has procured the assent of any creditor to the discharge; or (15) influenced the action of any creditor at any stage of the proceedings by any pecuniary consideration or obligation; or (16) if he has, in contemplation of becoming bankrupt, made any pledge, payment, transfer, assignment or conveyance of any part of his property, directly or indirectly, absolutely or conditionally, for the purpose of preferring any creditor or person having a claim against him, or who is or may be under liability for him, or for the purpose of preventing the property from coming into the hands of the assignee; or (17) of being distributed under this act in satisfaction of his debts; or (18) if he has been convicted of any misdemeanor under this act; or (19) has been guilty of any fraud whatever contrary to the true intent of this act; and before any discharge is granted, the bankrupt shall take and subscribe an oath to the effect that he has not done, suffered, or been privy to any act, matter, or thing specified in this act as a ground for withholding such discharge, or as invalidating such discharge if granted."

In regard to the first four of the numbered clauses of this section it may be conceded that the character of the acts therein described requires that they should have been committed after the passage of the bankrupt act. In the fifth clause there is an express limitation of time which only requires that the acts therein described should have been committed within four months before the commencement of the proceedings in bankruptcy, and as a petition could have been filed at the end of three months after the passage of the act, it can hardly be said that the acts referred to in this clause must have been committed after the passage of the bankruptcy act in order to bring the bankrupt within the prohibition of this section. The next clause, by its express terms, is limited to acts committed since the passage of the act, and as the succeeding clauses (the seventh and eighth) are only connected with it by the disjunctive conjunction "or," the same may be said in regard to those clauses. This actual and distinct expression of a limitation, in the clauses first alluded to, to acts committed after the passing of the act would seem to evidence an intention on the part of the legislature that the clauses in which there was no such limitation, either expressed or necessarily to be inferred, should not be so limited. In the next or ninth clause, there is a change of phraseology, which was not necessary unless it was intended to disconnect its provisions from the limitation of time contained in the three next preceding clauses. If not so intended, the connection with the sixth, seventh and eighth clauses would have been made by the use of the word "or" alone, as in the seventh and eighth clauses, but the words "if he" are inserted, apparently ex industria, to so far disconnect this clause from those immediately preceding as to remove it from the limitation of time expressed in the sixth clause. The subsequent insertion in the thirteenth clause, which contains the provision in regard to the omission to keep proper books of account of the words "subsequently to the passage of this act," is also a significant indication that the legislature intended no such or similar limitation to the clauses where no limitation was expressed or necessarily to be implied from the nature or character of the acts described; and in the clauses numbered fourteen and sixteen, the words "if he" are inserted as indicating a partial but distinct separation of these clauses from the preceding one (as was done in the commencement of the sixth clause,) so as to disconnect them from any limitation of time contained in the preceding clauses. I shall therefore hold that there is no such limitation in respect to the acts relied upon in said second specification. It was strongly urged that the intents imputed to the bankrupt by this second specification could not possibly have existed so long prior to the passage of the bankrupt act.

This is deemed a question of fact and not

one of law, and the court cannot say that the intents alleged, and which must be proved to invalidate the discharge, could not have existed prior to the passage of the bankrupt act as alleged, more especially as it appears by the Congressional Globe, that on the twelfth day of December, eighteen hundred and sixty-four, a bill to establish a uniform system of bankruptcy throughout the United States, which had been postponed from the then last session; was taken up on motion of Mr. Jenckes, was on his motion amended by striking out the words "first September, eighteen hundred and sixty-four," as the time when the act should take effect and inserting in lieu thereof "first of June, eighteen hundred and sixty-five," and was then passed by the house; that it was the next day sent to the senate for concurrence, when it was immediately read twice and referred to the committee on the judiciary. Indeed, from May twenty-third, eighteen hundred and sixty-two, when a bankrupt act was introduced into the senate of the United States by Mr. Foster, of Connecticut, to the passage of the bankrupt act of eighteen hundred and sixty-seven, the contemplation of becoming bankrupt may not unfrequently have been the happy or unhappy condition and occupation of the minds of many hopeless insolvents, and some of them, even in eighteen hundred and sixty-two, may have hastened to make secret and fraudulent dispositions of their property to prevent its distribution in bankruptcy and secure it for the future use of themselves and their families. Contemplation of bankruptcy within the intent of the bankrupt act, includes not only the contemplation of proceedings to be carried on in the bankruptcy court under the eleventh or thirty-ninth sections of that act, but also the contemplation of the commission of such acts as are by the bankrupt act declared to be sufficient to authorize an adjudication of bankruptcy against the party by whom they have been committed. In re Freeman [Case No. 5,082]. And an intent to prevent the distribution of his property under the bankrupt act might well exist in a case where a fraudulent disposition of a debtor's property was made in anticipation of the expected early passage of a bankrupt act. Taken in connection with such of the allegations of the first specification as it refers to and substantially adopts, and considering the allegations of fraud, and as to the continued use and possession by the bankrupt of the store and premises described—In re Moore [Id. 9,749]—I am of the opinion the second specification is sufficient, and the motion to strike it out is accordingly denied.

I am aware that in Re Rosenfeld [Id. 12,-058], it was held that such fraudulent acts must have been committed after the passage of the bankrupt act in order to bar a discharge. It is with much regret that I feel constrained to adopt a construction of the provisions in question, adverse to that adopted by the learned and excellent judge, now deceased, who decided that case, but I cannot approve his reasoning or adopt his conclusions, so far as they affect the principle questions in this case. I cannot agree that the acts enumerated in section twenty-nine "are in the nature of offences created and defined by the bankrupt law, the penalty for the commission of which, by the bankrupt, is the forfeiture of his right to a discharge," or that to hold "that acts committed before its passage were offences against the bankrupt law, would be to make that law, if not an ex post facto law, in the strict sense of the term, yet at least a law retroactive or retrospective in its character," if he meant that the bankruptcy courts, by the mere withholding of a discharge by reason of these provisions, necessarily constituted or considered these acts such offences against the bankrupt law. The bankrupt act was intended to operate, and has uniformly been held to operate upon and provide for the discharge of debts created before as well as after its passage, and in respect to debts contracted before its passage it is clearly a restrospective and retroactive law so far as it authorizes the discharge of such prior debts. Prior to the passage of the act the debtor had no right to a discharge from such debts, and he now has no right to such discharge except in the cases provided for and upon the conditions prescribed in the act.

The provisions under consideration create no "offence" and there is no forfeiture of an existing right denounced as the penalty for a newly created offence for the simple and obvious reason that a right to a discharge in the cases provided for did not exist when the act was passed and therefore the provisions now under consideration are not retroactive or retrospective in the offensive or proper sense of those terms. The act gives a debtor a right to a discharge of a debt contracted prior to its passage, provided he fully complies with its provisions and is not brought within the limitations, exceptions or prohibitory provisions of the act, and as this right only exists by virtue of the provisions of the bankrupt act, (which provisions, as has been stated, are retroactive and retrospective as to debts contracted before its passage,) the provisions which Judge Field considered retroactive or retrospective in their application to acts done before the passage of the act, are not in fact so, but only exceptions in restriction or limitation of the grant of power to the bankruptcy court, under which grant alone a debtor could, in a case not excepted from its operation, assert a right to a discharge. These exceptions and limitation, are, therefore, so far as this case is concerned, in restraint of a retrospective and retroactive law, and the considerations which require courts not to give such construction to a statute as to make it retroactive in its effects should operate in favor

of and not against a creditor whose debt, as in this case, accrued before the passage of the bankrupt act, and if it be true, as stated by the learned judge, that "as a general rule, it is a very objectionable feature in any law," to give it a retrospective operation, and that "an intention on the part of the legislature to give a law such a character, will never be presumed in the absence of express words to that effect," words of exception or limitation which even partially remove such objectionable features should be liberally construed and made effective for that purpose, when it can be done consistently with the language of its provisions.

The learned judge who decided In re Rosenfeld [supra], supposed that the words "subsequently to the passage of this act" in the clause which relates to the keeping of proper books of account were inserted because of the difference of meaning between the word "subsequently" in that provision and the word "since" when used in the same connection in the sixth clause. His acute and discriminating criticism upon the distinguishing difference in the meanings of these words is doubtless accurate and just, but it may well be doubted whether such nice distinctions, and such refined, exact and scholarly criticism should be much relied on in the interpretation or construction of legislative enactments. Webster, whose authority. is properly invoked by the learned judge, gives, "after, from the time that," as the primary signification of "since." He also says that the proper signification of "since" is "after," and its appropriate sense includes the whole period between an event and the present time, but after giving citations as examples of its use, he further says: " 'Since,' then, denotes during the whole time after an event or at any particular time during that period." By lawyers and legislatures most words not technical in their character, are used in their general and popular sense without nice discrimination in respect to their more exact critical meaning, and for this reason the substitution of the word "subsequently" for the word "since" in the second of the phrases above referred to is not considered as affecting in any considerable degree the question of interpretation involved in this case. If such nice and critical discrimination, and such learning, care and perfect accuracy of expression, as it has been supposed was exercised in this substitution of "subsequently" for "since," had been exercised in the selection and use of the precise words and exact forms of the sentences necessary to express the legislative intention in the fullest, clearest and most perfect manner throughout the whole of this act, it would have reduced the labors of the profession and of the courts, greatly to the advantage of both debtors and creditors.